UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| JEFFREY MARLOW, | : Case No. 3:17-cv-147 |
|---|---|
| Plaintiff, | : |
| vs. | : District Judge Walter H. Rice |
| | : Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Plaintiff Jeffrey Marlow brings this case challenging the Social Security Administration's denial of his application for period of disability and Disability Insurance Benefits. He applied for benefits on July 25, 2013, asserting that he could no longer work a substantial paid job. Administrative Law Judge (ALJ) Mark Hockensmith concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #5).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Hockensmith's non-disability decision.

## II. Background

Plaintiff asserts that he has been under a "disability" since January 14, 2013. He was forty-three years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). He has a high school education. *See* 20 C.F.R. § 404.1564(b)(4).

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Hockensmith that he had his first back surgery in 2004. (Doc. #5, *PageID* #82). After that surgery, he was able to return to work—at GM and then Caterpillar. *Id*. Although his back bothered him, he only needed muscle relaxers and "was usually able to get by." *Id.* at 82-83.

Unfortunately, Plaintiff's back condition deteriorated in January 2013. After a day of heavy lifting, he came home from work and was watching his grandson. *Id.* at 80. While his grandson was on the steps, Plaintiff reached forward to grab him and fell to the ground. *Id*. He had "never been in that much pain." *Id.* at 81. When his pain did not get better the next day, paramedics needed a flat board to get him out of his house. *Id*.

In March 2013, Plaintiff underwent neck surgery. *Id.* at 83. "I wish I would [have] never had it, because I have a feeling that … I probably would have been at least … able to get by like I was … before this second … fusion." *Id.* at 84. He feels "bent over all the time … and all this pressure." *Id*. His surgeon, Dr. Glickman, indicated that

he was progressing as planned but Plaintiff did not agree. *Id.* at 85. He could not put any weight on it for a couple of weeks and he was still using a walker when he returned to Dr. Glickman. *Id.* He jarred his back by merely stepping into a low spot in his yard. *Id.* And, he "fell a couple of times due to my back basically going out because of a jar." *Id.* After Plaintiff fell, he began using a cane for safety. *Id.* at 94. He does not need it to walk. *Id.* He did have a back brace but he does not use it very often anymore. *Id.* at 95. He tried physical therapy but when he reported falling, the physical therapist ended his sessions. *Id.* at 86. When he later returned to physical therapy, she again stopped his therapy—this time because of his pain. *Id.*

In his back, Plaintiff explained that he has pressure that "feels like … a baseball or something that's in the bottom of my back, all the time." *Id.* at 87. He has the pressure all the time and, "the more I stay in one position, the worse it gets." *Id.* If he does too much, then he also experiences shooting pains. *Id.* "And, a lot of times, my back feels like it's going to go out again, … I feel that pinched off thing where if I don't sit down and, or lay down, I'm going to be on the ground again. And … a lot of times that comes from repetitive motion." *Id.* at 88. "Repetitive bending definitely causes something to swell up and pinch a nerve …." *Id.*

Plaintiff tried a spinal cord stimulator and it helped. *Id.* at 88. But, he was not approved to use it. *Id.* He would prefer using it over narcotics. *Id.* at 89. His pain management physician, Dr. Marar, wants him to try a pain pump. *Id.* At the time of the hearing, Plaintiff was taking a muscle relaxer, Percocet, and ibuprofen. *Id.* at 90.

Percocet causes him to be drowsy—to the extent that if he knows he has to drive, he will not take it. *Id*.

Plaintiff has the most problems with his right leg but he has had issues with his left leg as well. *Id.* at 86. He has "a lot of numbness. A lot of tingling. Pain shooting down the upper part of my leg." *Id*. He has the numbness and tingling all of the time. *Id.* at 86-87.

Plaintiff struggles with depression and anxiety. *Id.* at 91. He saw a counselor in 2013 and at the time of the hearing, he was seeing Dr. Bishop and had for a couple months. *Id.* at 95. He has difficulty sharing personal information: "I've never been really too much into … sharing everything … and kind of always went with the theory I can … fix things myself." *Id.* at 96. Dr. Bishop prescribes Wellbutrin and medication to help Plaintiff sleep. *Id*.

Plaintiff lives in a house with his wife. *Id.* at 75. At the time of the hearing, they were selling the house because they wanted to downsize and because climbing stairs was difficult with Plaintiff's back problems. *Id*. On an average day, he spends half of his time lying down—either in bed or on the couch. *Id.* at 98. During the day, he spends the majority of his time on his couch. *Id.* at 97. After he takes his medications, he sometimes falls asleep for up to an hour. *Id.* at 99. Plaintiff explained that he used to help a little more with housework. *Id.* at 92-93. Now, he can only do little stuff around the house like load the dishwasher. *Id.* at 93. He still tries to mow their two-acre yard. *Id*. However, he has to mow in thirty-minute increments and a lot of times, he needs someone else to help him finish. *Id*.

Plaintiff has a driver's license and usually drives once or twice per day. *Id.* at 76. When he has to sit up straight—in a car or anywhere—his back starts to get stiff after just ten minutes, "a lot of pressure" builds up, and he has to change positions. *Id.* at 76-77. After thirty minutes of sitting, he has to get up, walk around, or lie down. *Id.* at 78. Lying down with a pillow under his knees helps him the most. *Id.* Plaintiff has difficulty sleeping because he wakes up often to change positions. *Id.* at 77.

**B.   Medical Opinions**

   *i.   Dennis Bingham, M.D.*

Plaintiff's treating physician, Dr. Bingham, completed a medical impairment questionnaire in December 2014. *Id.* at 650-51. Dr. Bingham indicated that Plaintiff has lumbar spinal stenosis with neuro-anatomic distribution of pain, limitation of motion of his spine, motor loss, sensory or reflex loss, positive straight leg raising test, and pseudoclaudication. *Id.* at 650.

Dr. Bingham opined that Plaintiff can stand for less than fifteen minutes at a time and sit for less than fifteen minutes at a time. *Id.* He needs to change position more than once every two hours. *Id.* He is unable to ambulate effectively. *Id.* He can only lift five pounds on an occasional basis and never bend or stoop. *Id.* Plaintiff needs to constantly elevate his legs at or above the waist during an eight-hour day. *Id.* Dr. Bingham concluded that Plaintiff's pain is severe and he is not able to work. *Id.*

   *ii.   Kristen Haskins, Psy.D., & Roseann Umana, Ph.D.*

In January 2014, Dr. Haskins reviewed Plaintiff's records and found that he has one severe impairment—disorders of back–discogenic and degenerative—and one

nonsevere impairment—somatoform disorder. *Id.* at 112-24. She opined Plaintiff had a mild restriction of activities of daily living and mild difficulties maintaining concentration, persistence, or pace; no difficulties in maintaining social functioning, and no repeated episodes of decompensation. *Id.* at 119.

Dr. Umana reviewed Plaintiff's records in April 2014 and affirmed Dr. Haskins' assessment. *Id.* at 126-39.

### iii. *Anne Prosperi, D.O., & Jan Gorniak, D.O.*

Dr. Prosperi reviewed Plaintiff's records in October 2013. *Id.* at 112-24. She opined Plaintiff could frequently balance; occasionally stoop, kneel, crouch, crawl, or climb ramps/stairs; and never climb ladders, ropes, or scaffolds. *Id.* at 121. He must avoid all exposure to hazards such as machinery or heights. *Id.* at 122. She concluded that he is not under a disability. *Id.* at 124.

In June 2014, Dr. Gorniak reviewed Plaintiff's records and affirmed Dr. Prosperi's assessment. *Id.* at 126-39.

## III. <u>Standard of Review</u>

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful

activity," in Social Security lexicon.  42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ."  *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Hockensmith to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

- Step 1: Plaintiff has not engaged in substantial gainful employment since January 14, 2013.

- Step 2: He has the severe impairments of degenerative disc disease status post lateral lumbar interbody fusion surgery and somatic symptom disorder.

- Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

- Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following limitations: (1) lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; (2) standing and/or walking for 4 hours in an 8-hour workday; (3) sitting for 6 hours in an 8-hour workday; (4) no climbing of ladders, ropes or scaffolds; (5) occasional climbing of ramps and/or stairs; (6) frequent balancing; (7) occasional stooping, kneeling, crouching, and crawling; (8) no work at unprotected heights; (9) occasional pushing/pulling with the lower extremities to the same weight limit as allowed for lifting and/or carrying; (10) no exposure to vibration; (11) limited to simple, routine tasks; and (12) in a static work environment with few changes in routine."

- Step 4: He is unable to perform any of his past relevant work.

| Step 5: | He could perform a significant number of jobs that exist in the national economy. |

(Doc. #5, *PageID* #s 47-59). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 59.

## V. Discussion

Plaintiff contends that the ALJ failed to adequately weigh the opinions of his treating physician and the State agency medical consultants. Further, the ALJ's findings regarding Plaintiff's daily activities are unreasonable and unsupported. The Commissioner maintains that the ALJ adequately weighed the medical source opinions and reasonably evaluated Plaintiff's subjective complaints.

### A. Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

9

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

ALJ Hockensmith found that the opinions of Plaintiff's treating physician, Dr. Bingham, were "not entitled to controlling or deferential weight" because "they are not fully supported by the record." (Doc. #5, *PageID* #57). He explained, Plaintiff's "performance of activities of daily living does not support an inability to do any work nor does the record demonstrate that [he] could do more than 15 minutes of sitting and standing." *Id*

The ALJ erred in finding that Dr. Bingham's opinion is not fully supported by the record. This finding reveals that the ALJ reviewed Dr. Bingham's opinion under a higher legal standard than the standard mandated by the Regulations. "For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques,

it is *not necessary* that the opinion be *fully supported* by such evidence." Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (emphasis added). Given this instruction, the ALJ applied incorrect legal criteria by declining to place controlling weight on Dr. Bingham's opinions for the reason it was not fully supported by the record. *Id.*; *see* 20 C.F.R. § 404.1527(c)(2); *Finch v. Berryhill*, No. 3:16-CV-00241, 2017 WL 4222891, at *4-5 (S.D. Ohio Sept. 22, 2017)

If, moreover, the ALJ discounted Dr. Bingham's opinions under the "supportability" factor, this too was error. Neither the supportability factor nor any other regulatory factor permitted the ALJ to reject Dr. Bingham's opinions by characterizing them as not **fully** supported by the record. Instead, the regulations speak in relative—not absolute—terms. The supportability factor, for instance, provides, "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3).

Accordingly, substantial evidence does not support the ALJ's non-disability finding, and Plaintiff's Statement of Errors is well taken.[2]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial

---

[2] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

11

right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and

to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Jeffrey Marlow was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

July 19, 2018                                    *s/Sharon L. Ovington*
                                                                            Sharon L. Ovington
                                                                            United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).